UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WARD WESLEY WRIGHT,

      Petitioner,

v.

                                      Civil Case No. 05-71569
                                      Crim. Case No. 96-80876

UNITED STATES OF AMERICA,

                                      Honorable Patrick J. Duggan

      Respondent.

_____/

**OPINION AND ORDER**
**DENYING  PETITIONER'S MOTION TO VACATE, SET ASIDE**
**OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 23, 2006.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

Ward Wesley Wright ("Petitioner"), presently confined at the United States

Penitentiary in Atwater, California, petitions this Court to vacate, set aside or correct his

sentence pursuant to 28 U.S.C. § 2255.  Following a jury trial, on June 11, 2001, Petitioner

was convicted of use of interstate commerce facilities in the commission of murder for hire,

in violation of 18 U.S.C. § 1958, interstate travel in aid of a crime of violence, in violation

of 18 U.S.C. § 1952(a)(2), and conspiracy to possess with intent to distribute and to distribute

cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  On October 31, 2001, this Court

sentenced Petitioner to life imprisonment.  In his *pro se* application, Petitioner challenges his

conviction and life sentence.  For the reasons set forth below, Petitioner's Motion shall be denied.

### I.  Background

#### A. Factual Background

Wright was charged with participating in a conspiracy to traffic cocaine between 1993 and 1996 with  Brian Chase, Raymond Kelsey, and William Arbelaez.  In 1993, Arbelaez, a Columbian national who trafficked cocaine began supplying cocaine to Chase from Columbia.  Kelsey was the pilot in the operation.  Kelsey flew to Los Angeles to pick up 50 kilograms of cocaine and then flew to Detroit to deliver it to Chase.  Chase sold part of the shipment to David Moore and the other part to Wright.  Both Moore and Wright were members the Avengers Motorcycle Club (the "Avengers").  Moore and Wright would then sell the cocaine through their contacts with the Avengers.

Shortly after the first shipment, Kelsey flew a 25 kilogram cocaine shipment to Chase. Chase and Kelsey decided not to pay Arbelaez for the 25 kilograms and told him that the cocaine had been seized by Canadian authorities.  In the spring of 1993, Kelsey made another trip to Los Angeles to pick up what he believed was 75 kilograms of cocaine.  However, Chase and Kelsey learned that the shipment contained only 66 kilograms.  Chase distributed the drugs without telling Arbelaez of the deficiency.  Wright received some of this shipment.

By this time, Moore had stopped distributing cocaine for Chase.  Instead, Chase supplied cocaine directly to Moore's main customer, "West Side Jimmy."   In the early summer of 1993, Moore demanded a commission from Chase.  After Chase refused, Moore told him that he "knew how to take care of business."  Believing that Moore intended to kill

2

him, Chase attempted to offer Moore $40,000, but no deal was reached.  Chase, Kelsey and

Wright decided that to end the dispute, Wright would kill Moore for $50,000.

On July 29, 1993, Wright obtained a .22-caliber pistol and drove to Columbus, Ohio,

where Moore was staying at a hotel.  In the early morning hours of July 30, 1993,Wright

went to Moore's hotel room asking Moore for a place to stay.  While Moore slept, Wright

shot him in the head twice.

Following Moore's murder, Chase and Kelsey still needed to deal with Arbelaez, who

insisted that they compensate him for the 25 kilograms of cocaine confiscated by the

Canadian authorities and the 9 kilograms missing from the 75 kilogram shipment.  Arbelaez

decided that they could steal airplanes and give them to Arbelaez's cocaine supplier, the

Medellin Cartel in Colombia.

On May 7, 1994, Wright along with Burke, another member of the Avengers, helped

Kelsey and Chase steal a United States Forest Service plane in Atlanta, Georgia.  Wright and

Burke secured aviation fuel at a hangar in Florida so that the plane could be refueled on its

way to Colombia.  On October 6, 1994, Kelsey stole another plane in Arkansas, refueled it

in Florida, and flew it to Colombia.  Wright did not participate in this theft.  In November

1994, Kelsey delivered another shipment of cocaine to Chase in Michigan.  After Chase and

Kelsey did not pay Arbelaez for the entire shipment, they decided to steal another plane to

compensate him.  On February 18, 1996, Kelsey stole a plane in Florida, and Wright and

Burke set up a refueling site.  Kelsey and Chase then flew the plane to Columbia to deliver

it to the Cartel.

In April 1996, while attempting to return from Colombia, Kelsey was arrested in St.

Martin and he agreed to cooperate with the U.S. authorities. In the summer of 1996, Kelsey

made a series of recorded telephone calls to Chase and Burke regarding drug shipments and

Wright's involvement in the drug deals. In October 1996, Chase and Burke came to a Detroit

hotel believing that they were to meet Kelsey to receive 100 kilograms of cocaine. Instead,

they were arrested.

In April 1997, agents obtained a warrant to search Wright's Las Vegas apartment where

they seized false identification documents containing Wright's alias "Arthur Anderson," a

name which Wright had used on a wedding certificate in Las Vegas in 1993, as well as at

U.S. Customs in West Palm Beach Florida, after returning from St. Martin with Chase where

the two had arranged to meet Arbelaez to discuss the plane theft plans. The authorities also

found a matchbook from the same motorcycle repair shop Moore had visited the afternoon

before Wright murdered him.

### B. Procedural Background

Wright was charged with: (I) the use of interstate commerce facilities in the

commission of murder for hire; (II) conspiracy in the use of interstate commerce facilities

in the commission of murder for hire; (III) interstate travel in aid of a crime of violence; and

(IV) conspiracy to possess with intent to distribute and to distribute cocaine. On September

9, 1997, the Government moved to dismiss the indictment without prejudice as to Wright,

arguing that the prosecution of Wright would jeopardize an ongoing investigation of the

Avengers. The motion was granted. On July 23, 1998, the Government obtained another

indictment against Wright charging him with all four counts contained in the original

indictment, although Count II was later dismissed by stipulation of the parties.

4

On April 3, 2001, this Court held a hearing on Petitioner's motion to suppress the evidence found in his Las Vegas apartment, which was denied on April 4, 2001. On May 8, 2001, this Court held a hearing on Petitioner's motion to dismiss the indictment based on violations of the statute of limitations, the Due Process Clause, and his right to a speedy trial, which was denied on May 9, 2001.

On June 11, 2001, following a trial at which both Chase and Kelsey testified against him, a jury found Petitioner guilty of all three remaining counts. On June 18, 2001, Petitioner filed a motion for acquittal, which this Court denied on October 30, 2001. On October 31, 2001, Petitioner was sentenced to two terms of life imprisonment and one term of sixty months imprisonment.

## II.   Standard of Review

Section 2255 states, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

The petitioner bears the burden of establishing any claim asserted in his § 2255 motion. To warrant relief because of constitutional error, the petitioner must show that the error was one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 471 (1962). To warrant relief for a nonconstitutional error, the petitioner must show a fundamental defect

in the proceedings which inherently results in a complete miscarriage of justice. *Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994).

### III.   Applicable Law and Analysis

Petitioner argues that he was denied effective assistance of counsel because his attorney: (1) failed to present witnesses at the May 8, 2001 pretrial hearing requesting dismissal of indictment; (2) failed to request that the indictment be dismissed with prejudice; (3) failed to conduct an investigation regarding information provided by Larry Powell; (4) failed to secure Petitioner's work records to disprove the Government's contention that he did not work during 1994 through 1997; (5) failed to move for a defense forensic expert under 18 U.S.C. § 3006A(a); (6) failed to interview or investigate guests who were at the Knights Inn on July 29-30, 1993; (7) failed to pursue leads indicating David Moore was killed by someone other than Petitioner; (8) failed to move the presiding judge to recuse himself due to ex parte communication with government counsel; (9) failed to conduct a meaningful investigation and to interview potential defense witnesses;  (10) permitted the admission of a matchbook into evidence without objection; (11) failed to move for a mistrial when it was discovered that the jury was discussing the case before the start of deliberations; (12) failed to move for the appointment of a private investigator; (13) failed to secure records about Raymond Kelsey and Brian Chase, as well as their aliases; (14) failed to move for a continuance when toll records of Brian Chase were belatedly provided to the defense; and (15) failed to object to the admission of forensic expert testimony. Petitioner also alleges that government counsel committed prosecutorial misconduct by: (1) appealing to the trial jury's sympathy and vouching for witnesses; and (2) permitting the knowing perjured testimony of

6

various government witnesses.   Finally, Petitioner contends that his drug conviction is
unconstitutional in light of the Supreme Court's decisions in *Blakely v. Washington*, 124 S.
Ct. 2531 (2004) and *United States v. Booker*, 125 S. Ct. 738 (2005).   The Court will address
each of Petitioner's arguments separately.

### A. <u>Ineffective Assistance of Counsel Claims</u>

"As all Federal Courts of Appeals have now held, the proper standard for attorney
performance is reasonably effective assistance of counsel."  *Strickland v. Washington*, 466
U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).   A claim of ineffective assistance of counsel
is judged under a two-part test.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.   First,
the petitioner must show that counsel's performance was deficient by showing that it fell
below an objective standard of reasonableness according to prevailing norms of the legal
profession.  *Id.* at 690, 104 S. Ct. at 2066.   Counsel's performance is deficient if it falls
"outside the wide range of professionally competent assistance."  *Id.*   However, "the court
should recognize that counsel is strongly presumed to have rendered adequate assistance and
made all significant decisions in the exercise of reasonable professional judgment."  *Id.*
Second, the petitioner must show that counsel's performance prejudiced the defense.  *Id.* at
687, 104 S. Ct. at 2064.   Counsel's deficiency results in prejudice if "there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would
have been different."  *Id.* at 694, 104 S. Ct. at 2068.

> 1. <u>Failure to present witnesses at the May 8, 2001 pretrial hearing requesting dismissal of indictment</u>

The motion to dismiss was based on Petitioner's allegation that the Third Superseding

Indictment was improperly sealed beyond the expiration of the statute of limitations.  In response, the Government argued that the sealing of the indictment was necessary to protect undercover agent and informant Larry Powell, an associate of the Avengers, while the Government was still investigating the Avengers.

Petitioner argues that his counsel should have called witnesses to prove that Powell was not a reliable witness.  For example, according to Petitioner, any member of the Avengers, the Ferguson family, or Petitioner's wife, would have testified that the club's bylaws precluded members from discussing club-related affairs with "citizens," such as Powell (Pet. at 11-13).  Moreover, according to Petitioner, Dennis "Pitbull" Brewer, another member of the Avengers, would have testified that he believed Moore had been killed by a rival club. (Pet. at 11).  Petitioner, however, fails to offer any affidavits from these individuals in support of his allegations that they would have testified as alleged.

Moreover, even if Petitioner could establish that these witnesses would have testified as alleged, the Court still would have allowed the indictment to be unsealed after the expiration of the statute of limitations.  When deciding whether an indictment may be unsealed after the expiration of the statute of limitations, the court considers the following: "(1) whether the indictment was properly sealed, and (2) whether the defendant has shown actual prejudice from a sealed indictment being opened beyond the statute of limitations." *U.S. v. Wright*, 343 F.3d 849, 857 (6th Cir. 2003).  To determine whether the indictment was properly sealed, the *Government* must demonstrate that a legitimate prosecutorial purpose or public interest supported the sealing of the indictment. *Id.* at 858.  Petitioner's alleged witnesses would not have been able to refute that the Government's motive for sealing the

8

indictment was to protect Powell.  In addition, Petitioner has not shown how his alleged witnesses would have been able to establish actual prejudice.

    2.  <u>Failure to request that the indictment be dismissed with prejudice</u>

On September 9, 1997, the Government moved to dismiss the First Superceding Indictment as to Defendant Wright without prejudice.  The Government filed an *in-camera* sealed submission that explained that prosecuting Petitioner would jeopardize the Government's investigation of the Avengers and compromise Powell's safety.  At a hearing on the motion, Petitioner's counsel concurred in the motion for dismissal but requested dismissal with prejudice. (9/08/98 Hearing Tr. at 3-4).  The Court granted the Government's motion to dismiss without prejudice.  Petitioner contends that counsel should have inquired as to why the Government was moving for dismissal of the indictment and should have asked the Court for time to file a written motion requesting the indictment be dismissed with prejudice under the Speedy Trial Act, 18 U.S.C. § 3161.  However, Petitioner has failed to advance any legal theory in support of his contentions that his attorney could have required the Government to disclose its reasons for requesting a dismissal or that there would have been a basis for a dismissal pursuant to the Speedy Trial Act.  Thus, Petitioner has failed to demonstrate palpable ineffectiveness and prejudice.

    3.  <u>Failure to conduct an investigation regarding information provided by Larry Powell</u>

Petitioner alleges that he told his attorney to investigate Powell's claims that: (1) on Friday, July 30, 1993,  after learning Moore had been killed, Powell went to the Avengers' clubhouse, but no one was there; and (2) he then went to a local flea market between the hours of 12:00 p.m. and 1:00 p.m., "which he intimated was open for business," where he

saw another member of the Avengers and discussed Moore's death.  (Pet. at 15).  According

to Petitioner, Powell's testimony was false because the flea market was only open on Friday

evenings and weekends and no member would discuss Moore's death with a "citizen."

However, Petitioner offers no proof in support of these allegations.  Moreover,

Petitioner has failed to demonstrate that his counsel's alleged failure to investigate Powell's

testimony prejudiced Petitioner's defense.

4. <u>Failure to secure Petitioner's work records to disprove the Government's contention that he did not work during 1994 through 1997</u>

According to Petitioner, at trial, the Government informed the jury that Wright did not

work or file tax returns during the years 1994 through 1997.  Petitioner contends that he told

his attorney that he worked under an alias during those years, but his attorney failed to secure

records to prove that Petitioner was employed during that time period.

Again, Petitioner has not offered any proof in support of his allegation that he worked

during those years.  In addition, Petitioner has failed to show that he was prejudiced by this

omission because his employment status was not a significant issue during trial.

5. <u>Failure to move for a defense forensic expert under 18 U.S.C. § 3006A(a)</u>

At trial, the Government called Dr. Patrick M. Fardal, Chief Forensic Pathologist and

Deputy Coroner from the Franklin County Coroner's Office in Columbus, Ohio, to testify

as to the cause and time of Moore's death.  Dr. Fardal estimated that Moore died between the

hours of 3:00 a.m. and 7:00 a.m.  According to Petitioner, Dr. Fardal failed to take Moore's

body temperature and determine if rigor mortis had fully formed.  (Pet. at 18).  Petitioner

contends that his attorney should have moved for a defense forensic expert, who would have

testified that Moore's time of death was different than that estimated by Dr. Fardal.

However, Petitioner has failed to offer any support for his allegation that another forensic expert, when presented with Dr. Fardal's observations and the information contained in the police report, would have disagreed with Dr. Fardal's estimate.

6. <u>Failure to interview or investigate guests who were at the Knights Inn on July 29-30, 1993</u>

Petitioner contends that his attorney should have interviewed guests of the Knight's Inn, where Moore was killed. According to Petitioner, one guest stated that she observed a white male "standing in front of Room #106" at approximately 11:55 a.m. on the morning Moore was found dead in his room. Petitioner contends that this testimony supports his contention that Moore was killed later than the Government believed. However, Petitioner has not shown how failing to interview this guest prejudiced Petitioner because Petitioner has not demonstrated how such information would have exculpated him.

7. <u>Failure to pursue leads indicating David Moore was killed by someone other than Petitioner</u>

Petitioner contends that his attorney failed to investigate the possibility that other people may have murdered Moore. Petitioner spends seven pages of his brief detailing numerous theories ranging from his suspicion that Moore was killed by a man who was obsessed with Moore's wife to his belief that an unidentified prostitute killed Moore. Petitioner, however, has failed to provide any proof that any of these individuals murdered Moore. Moreover, Petitioner has failed to demonstrate that these numerous investigations would have produced evidence implicating another in Moore's murder.

11

8. <u>Failure to move the presiding judge to recuse himself due to ex parte communication with government counsel</u>

During a hearing on May 8, 2001, Government counsel made a statement that the Government had kept the Court abreast of the developments relating to the Avengers and Moore homicide investigation. (Pet. at 28). Petitioner contends that his attorney should have moved for recusal because the Court "could not divorce itself from influence of the ex parte information imparted to it by the Government." (Pet. at 28).

First, Petitioner has failed to offer any legal authority in support of his belief that his attorney should have sought the Court's disqualification. A district judge is required to recuse himself "only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might be reasonably questioned." *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) (quotation omitted).

Second, Petitioner has failed to offer any facts that would support recusal. At the May 8, 2001 hearing, the Government moved to dismiss the indictment without prejudice to protect the ongoing investigation of the Avengers in Cleveland and to protect the identity of an informant from being revealed. Petitioner has failed to demonstrate how communications between the Government and the Court regarding the Cleveland investigation prejudiced Petitioner.

9. <u>Failure to conduct a meaningful investigation and to interview potential defense witnesses</u>

Petitioner lists thirteen potential witnesses, many discussed above, whom he believes his attorney should have interviewed. However, Petitioner has not offered any proof that his attorney did not attempt to interview these witnesses, and Petitioner has not offered any proof

12

that these witnesses would have testified as he contends.

10. <u>Failure to object to the admission of a matchbook into evidence</u>

Petitioner argues that his attorney should have objected to the admission of a "Custom Cycle City" matchbook that was found inside the pocket of one of his leather vests during the search of his Las Vegas apartment.  At trial, the prosecution presented evidence that Moore had visited Custom Cycle City the afternoon before he was murdered.  The prosecution claimed that Wright took the matchbook when he killed Moore.  Petitioner contends that the owner of Custom Cycle City handed out these matchbooks at Moore's funeral.  In its response, however, the Government contends that Petitioner's attorney did object to the admission of the matchbook, but that it was admitted over the objection.

11. <u>Failure to move for a mistrial when it was discovered that the jury was discussing the case before the start of deliberations</u>

Petitioner argues that his attorney should have moved for a mistrial after learning that the jury had requested to be reminded of the charges against him.  The Court declined to remind the jury of the charges against Wright and noted that the communication was harmless because it was information the jury had already heard.

Petitioner has failed to present the Court with any evidence that his attorney's motion for a mistrial would have been successful, especially in light of the Court's characterization of the request as harmless.  Thus, Petitioner has failed to demonstrate that his attorney was ineffective or that he was prejudiced.

13

12. <u>Failure to move for the appointment of a private investigator</u>

Although Petitioner contends that his attorney was ineffective for failing to seek funds to hire a private investigator, he presents the Court with no evidence that it would have resulted in a different outcome. Therefore, Petitioner has failed to establish prejudice under *Strickland*.

13. <u>Failure to secure records about Raymond Kelsey and Brian Chase, as well as their aliases</u>

Petitioner theorizes that Kelsey and Chase may have stolen an airplane, flown to Columbus, Ohio to kill Moore, and then returned to Michigan. Petitioner contends that he asked his attorney to obtain records in support of his theory. However, Petitioner has failed to provide the Court with any evidence that such records exist.

14. <u>Failure to move for a continuance when telephone toll records of Brian Chase were belatedly provided to the defense</u>

Petitioner contends that the Government waited until the trial to provide Chase's telephone records to the defense, which precluded defense counsel from studying them or consulting with Petitioner about them. However, Petitioner fails to explain how a more thorough review of the records would have helped his defense.

15. <u>Failure to object to the admission of forensic expert testimony</u>

Petitioner argues that his attorney was ineffective for failing to object to the admission of Dr. Fardal's testimony because the Government did not identify him on its witness list and did not provide a written summary of his testimony. Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure requires the government to, upon request, give the defendant a written

14

summary of expert testimony it intends to present at trial. Petitioner has failed to include any evidence that his attorney requested but did not receive a written summary of Dr. Fardal's testimony.

In addition, Petitioner is unable to show prejudice. FED. R. CRIM. P. 16(d)(2) would not have required the Court to exclude Dr. Fardal's testimony. *See United States v. Bartle*, 835 F.2d 646, 649-50 (6th Cir. 1987); *United States v. Glover*, 846 F.2d 339, 342 (6th Cir. 1988). The Court would have had the discretion to remedy the alleged violation by granting a recess or a continuance to allow the defense an opportunity to prepare to impeach Dr. Fardal. *Id.*

### B. Prosecutorial Misconduct Claims

First, Petitioner contends that the prosecutor committed prosecutorial misconduct by appealing to the jury's sympathy and by vouching for witnesses. However, Petitioner has failed to identify any specific statements to support his allegations.

Second, Petitioner argues that the Government allowed perjured testimony. Petitioner has failed to offer any proof in support of his allegations that the witnesses perjured themselves or that the Government was aware of the alleged perjury. Finally, because Petitioner failed to raise on direct appeal the claim that the Government knowingly permitted perjured testimony, this claim is procedurally defaulted. *Phillip v. U.S.*, 229 F.3d 550, 552 (6th Cir. 2000).

### C. Petitioner's Sentence

Petitioner contends that his sentencing violated *United States v. Booker*, 125 S. Ct. 738 (2005), which held that Federal Sentencing Guideline are advisory rather than mandatory.

15

However, Courts have refused to apply *Booker* retroactively.  *Tyler v. Cain*, 533 U.S. 656, 662-63 (2001) (concluding that the Supreme Court itself must make a new rule retroactive); *see also Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005) (holding that *Booker* does not apply retroactively in collateral proceedings).

Accordingly,

**IT IS ORDERED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is **DENIED**.


                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:

Ward Wesley Wright
#32005-048
P.O. Box 019001
Atwater, CA 95301

Elizabeth Stafford, AUSA