UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 2:96-cr-80876-3

HONORABLE STEPHEN J. MURPHY, III

v.

WARD WESLEY WRIGHT,

    Defendant.

                              /

**OPINION AND ORDER DENYING DEFENDANT'S
SECOND MOTION FOR COMPASSIONATE RELEASE [301]**

Earlier, the Court denied Defendant Ward Wesley Wright's first motion for compassionate release because Defendant had failed to exhaust administrative remedies. ECF 300, PgID 464. Defendant then renewed the motion for compassionate release about a month later. ECF 301. The parties fully briefed the motion and the Court held a hearing by Zoom on September 30, 2020; Defendant was present from prison. ECF 301, 303, 304, 307, 308, 309. At the Court's request, the parties later provided supplemental briefings to address matters discussed during the hearing. ECF 310, 311. The Court will now deny Defendant's motion for compassionate release.

**BACKGROUND**

More than two decades ago, Defendant was a member of the Avengers Motorcycle Club. ECF 274, PgID 270. As a member, Defendant trafficked cocaine alongside another member, David Moore. *Id.* Three other individuals—Brian Chase,

1

Raymond Kelsey, and a Colombian national—worked together to traffic cocaine from Colombia to Defendant and Moore. *Id.*

But Moore had a falling out with the group within a few months. *Id.* And to make sure that Moore's departure would not threaten the trafficking scheme, Defendant had worked out a deal with Chase and Kelsey: he would kill Moore for fifty-thousand dollars. *Id.* at 270–71. Defendant then drove to Ohio and shot Moore twice in the back of the head while Moore slept. *Id.* at 271.

After Moore's murder, Defendant, alongside Chase, Kelsey, and another member of the Avengers Motorcycle Club, stole airplanes in the United States and delivered them to the Medellín Cartel in Colombia. *Id.* Ultimately, federal authorities caught on to the plane-stealing scheme and arrested the four men. *Id.* at 271–72.

After the arrests, Chase and Kelsey cooperated with the Government and later testified against Defendant. *Id.* at 273. Chase also pleaded guilty to murder for hire in violation of 18 U.S.C. § 1958 in connection with Moore's death and conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. ECF 307-2 (Chase's plea agreement) (under seal). In exchange for his cooperation, Chase received a 180-month prison sentence. ECF 106, 108; *see also* ECF 307-2 (under seal). Similarly, Kelsey pleaded guilty to various offenses, most notably aiding and abetting murder for hire in violation of 18 U.S.C. § 1958 and received a 300-month prison sentence for his cooperation. *United States v. Kelsey*, 96-cr-2057, ECF 38, 97-cr-2018, ECF 7, 97-cr-2019, ECF 7, and 97-cr-2020, ECF 8 (N.D. Iowa). Defendant, notably, did not take a plea deal or cooperate with the Government. ECF 274, PgID 273.

2

A jury later found Defendant guilty of murder for hire in violation of 18 U.S.C. § 1958, interstate travel in aid of a violent crime in violation of 18 U.S.C. § 1952(a)(2), and conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. ECF 274, PgID 269. And the Honorable Patrick J. Duggan sentenced Defendant to two concurrent life sentences and one concurrent term of sixty months' imprisonment. *Id.* at 273; ECF 307-7, PgID 672 (under seal) (Defendant's sentencing transcript); ECF 213. Defendant, however, maintained his innocence during sentencing. ECF 307-7, PgID 671 (under seal); ECF 213.

During his almost twenty years in prison, Defendant has had four disciplinary violations. ECF 311-2. The most recent occurred almost two years ago for fighting. *Id.* at 751.

And over the last three years, Defendant has spent extensive time in the hospital, including overnight stays. ECF 310, PgID 741–43. As a sixty-year-old man, Defendant currently lives with many medical conditions including Obesity, Cataracts, Diabetes, End-Stage Renal Disease, and Peripheral Vascular Disease, which led to multiple amputations of his fingers and legs. ECF 288, PgID 411; ECF 292, PgID 430 (physician's report) (under seal); ECF 304, PgID 563–64, 566, 568 (Defendant's medical records) (under seal). Defendant is also on dialysis, uses an electric wheelchair for mobility, and requires assistance for activities that require fine motor skills. ECF 292, PgID 430 (under seal). Almost thirty months ago, a prison

physician disclosed that Defendant had eighteen months to live. *Id.* at 431 (under seal).

## LEGAL STANDARD

To be eligible for compassionate release, Defendant must show that "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Section 1B1.13 of the Sentencing Guidelines provides some guidance about what constitutes "extraordinary and compelling reasons." U.S.S.G. § 1B1.13. The Guidelines classify those reasons in four categories: (1) Defendant's medical condition; (2) Defendant's age; (3) family circumstances; and (4) additional reasons "other than, or in combination with" the first three categories. *Id.* at cmt. n.1(A)–(D).

Even if Defendant establishes "extraordinary and compelling reasons," he is ineligible for compassionate release if the applicable sentencing factors of 18 U.S.C. § 3553 override "what would otherwise be extraordinary and compelling circumstances." *United States v. Araña*, No. 2:95-cr-80272-13, 2020 WL 2214232, at *2–4 (E.D. Mich. May 7, 2020) (quoting *United States v. Gotti*, 433 F. Supp. 3d 613, 615 (S.D.N.Y. 2020)) (internal quotations omitted); *see* 18 U.S.C. § 3582(c)(1)(A). Although 18 U.S.C. § 3553(a) contains six factors, only three apply to Defendant's compassionate release motion. The first factor requires the Court to evaluate the nature and circumstances of the offense and the history and characteristics of Defendant. 18 U.S.C. § 3553(a)(1). Under the second factor, the Court must evaluate the need for the sentence imposed; specifically, whether the sentence reflects the seriousness of the offense, provides just punishment, affords adequate deterrence,

4

and protects the public from further crimes. 18 U.S.C. § 3553(a)(2). And the third applicable factor requires the Court to consider avoiding unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

## DISCUSSION

To begin, the Government conceded that Defendant had exhausted his administrative remedies. ECF 307, PgID 606–08 (under seal); *see* 18 U.S.C. § 3582(c)(1)(A). The Court agrees that Defendant satisfied the exhaustion requirement of § 3582(c)(1)(A) because he completed the administrative process with the Bureau of Prisons. *See* ECF 307-9 (July 22, 2020 letter from the Bureau of Prisons denying Defendant's request for compassionate release) (under seal). The Court will therefore address the merits of the motion.

I.  <u>Extraordinary and Compelling Reasons</u>

The Government also conceded that Defendant has established extraordinary and compelling reasons to warrant his release. ECF 307, PgID 608 (under seal). Indeed, Defendant's medical conditions place him at high risk of severe illness from COVID-19. ECF 292, PgID 430 (physician's report) (under seal); ECF 304, PgID 563–64, 566 (Defendant's medical records) (under seal); s*ee People with Certain Medical Conditions*, CDC, (Oct. 19, 2020), https://bit.ly/31WKhck [https://perma.cc/MHP3-W5EH]. Because Defendant has established "extraordinary and compelling reasons," the Court must now consider whether the 18 U.S.C. § 3553 sentencing factors favor his continued detention. 18 U.S.C. § 3582(c)(1)(A).

5

II.      Section 3553(a) Factors

The Court need only address the sentencing factors in 18 U.S.C. § 3553 "to the extent they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). As stated above, only three apply to Defendant's motion, so the Court will address each in turn.

*A. Nature and Circumstances of Defendant's Offenses and Personal History*

For the first factor, the Court must weigh evidence from both Defendant's criminal past and rehabilitative evidence that "provides the most up-to-date picture" of Defendant. *Pepper v. United States*, 562 U.S. 476, 492 (2011); *see* 18 U.S.C. § 3553(a)(1).

To begin, Defendant's long involvement in a criminal biker gang mars his criminal history. ECF 274, PgID 270–71. Under the Guidelines, Defendant has a prior criminal history of three and an offense level of forty-three for his present drug trafficking and murder for hire convictions. ECF 307-7, PgID 672 (under seal); *e.g.*, ECF 213. Exacerbating Defendant's criminal history is the fact that Defendant was not merely selling drugs on a street corner; he murdered, stole airplanes, and did business with the Medellín Cartel. ECF 274, PgID 269–71. Given that history, Defendant received two concurrent life sentences and one concurrent term of sixty months' imprisonment. *Id.* at 273; ECF 307-7, PgID 672 (under seal); *e.g.*, ECF 213.

Apart from his serious criminal history, Defendant's lack of remorse also tarnishes his character. ECF 307-7, PgID 671 (under seal); *e.g.*, ECF 213. For most of his incarceration, Defendant has not taken responsibility for his crimes. In fact, less than two years ago, Defendant explained to the Court that he "did not want to

6

minimize the nature of [his] criminal offense nor [sic] make any commentary on [his] guilt or innocence[.]" ECF 28, PgID 327. Now—and after counsel's involvement—Defendant fully expressed remorse for killing Moore. *See* ECF 308, PgID 714 (letter from Defendant); *see also* ECF 308, PgID 705 (acknowledging that Defendant expressed remorse after counsel's involvement). If anything, Defendant's newfound remorse hints at a slim character improvement since his conviction. ECF 307-7, PgID 671 (under seal); *e.g.*, ECF 213; *see United States v. Araña,* No. 2:95-cr-80272, 2020 WL 5569803, at *3 (E.D. Mich. Sept. 17, 2020) ("[T]here has been no suggestion of remorse or responsibility until after multiple [unsuccessful] filings for compassionate release. . . ."). Even so, Defendant has still not apologized to Moore's family or efforted to comfort them either through a letter or at the Court's hearing in September.

Still, after years of indifference to Moore's family, Defendant has taken some positive rehabilitative steps. First, he has taken almost a dozen educational courses over his twenty years in prison. ECF 310, PgID 739. Second, Defendant submitted familial letters suggesting that he is now more joyful person. ECF 308, PgID 716–22; ECF 310, PgID 737. But letters from family and friends about Defendant's kindness are unpersuasive. *See United States v. Nero*, No. 17-20183, 2018 WL 10075971, at *5 (E.D. Mich. Apr. 16, 2018) (finding that familial letters were not persuasive evidence of a defendant's kindness, nonviolent nature) (citing *United States v. Gray*, 20 F. App'x 473, 475 (6th Cir. 2001)).

And despite what his friends and family have to say, Defendant has had four disciplinary violations in prison. ECF 311-2. The first violation occurred nearly nine

7

years ago for fighting and resulted in loss of visitation privileges and segregation. *Id.* at 752. The second occurred nearly eight years ago for possession of an unauthorized item. *Id.* at 751. The third occurred nearly six years ago for possession of drugs or alcohol. *Id.* And the fourth occurred just two years ago for fighting. *Id.*

Granted, after examining the supplemental briefs, the most recent fighting violation was not as severe as initially supposed. Defendant's punishment resulted only in loss of commissary and email privileges for sixty days. *Id.* And, based on the hearing officer's report, Defendant may have acted in self-defense. ECF 310, PgID 732–35. Although the supplemental briefs assist Defendant's case, the issue remains that Defendant suggested in a letter to the Court that he behaved poorly because he was coping with his medical diagnoses. ECF 284, PgID 326. To his credit, Defendant has had no other incidents of physical violence or misconduct in the past two years.

At the same time, however, Defendant's physical condition has deteriorated to the point where he is unable to carry out many daily activities without assistance. ECF 292, PgID 430 (under seal). The Court therefore cannot find that Defendant's two years' worth of good behavior was because of an improvement in character rather than Defendant's deteriorating health. *See United States v. Owens*, No. 18-cv-20214, 2020 WL 5440327, at *4 (E.D. Mich. Sept. 10, 2020) (granting compassionate release after explaining that working, no disciplinary violations, and ten years without another violent crime conviction showed that a defendant rehabilitated his conduct). Nor can the Court find that Defendant has taken serious rehabilitative steps while in prison. *See Harrell v. United States*, No. 13-20198, 2020 WL 2768883, at *3 (E.D.

Mich. May 28, 2020) (recognizing that a defendant had an "extensive record of rehabilitation and training" that "overshadow[ed]" two prior disciplinary incidents and warranted release). In short, the Court finds that Defendant's record of remorse and good behavior is too short to warrant a sentence reduction for his serious crimes. *See United States v. Tidwell*, No. 94-353, ---F. Supp. 3d ---, 2020 WL 4504448, at *1 (E.D. Penn. Aug. 5, 2020) (granting compassionate release to a prisoner that served twenty-six years of a life sentence without committing any violent misconduct). The first sentencing factor therefore favors denying compassionate release.

### B. Need for the Sentence Imposed

For the second factor, the Court must consider whether Defendant's sentence reflects the seriousness of the offense, provides just punishment, affords adequate deterrence, and protects the public from further crimes. 18 U.S.C. § 3553(a)(2).

To begin, federal courts have recognized that sometimes releasing a defendant that suffers from serious medical discomfort may provide more benefit to society than further incarceration. *See United States v. McGraw*, No. 2:02-cr-00018, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019). Essentially, once a defendant is doomed to "medical purgatory . . . serv[ing] out the rest of his life sentence would be greater than necessary to serve the purposes of 18 U.S.C. § 3553(a)(2)." *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *4 (E.D.N.Y. July 30, 2019) (internal quotations omitted). And under these circumstances, a defendant usually spends "years of his sentence while seriously ill and in physical discomfort" before he is released. *Araña*, 2020 WL 2214232, at *6; *see McGraw*, 2019 WL 2059488, at *5

9

(granting compassionate release to a defendant that "served *much of* his sentence while seriously ill and in physical discomfort") (emphasis added).

Over the last three years, Defendant has experienced serious medical complications and spent extensive time in the hospital. ECF 292 (physician's report) (under seal); ECF 304 (Defendant's medical records) (under seal); ECF 310, PgID 741–43. Defendant's medical conditions, on their own, suggest that an early release may provide more benefit than keeping him in prison because he has a low chance of recidivism. *See Wong Chi Fai*, 2019 WL 3428504, at *4 (explaining that a defendant who suffered from three years of serious medical problems warranted release); *McGraw*, 2019 WL 2059488, at *5 (finding that further incarceration of a severely ill defendant is not "necessary to protect the public from future crimes").

But, at the same time, the Court finds that keeping Defendant in prison is the only way to reflect the seriousness of his crimes, provide just punishment, and afford adequate general deterrence. First, the jury not only convicted Defendant of serious drug-trafficking offenses, but also of "the ultimate violence—the taking of a human life." *Araña*, 2020 WL 2214232, at *6. For that, the Court appropriately sentenced Defendant to life in prison. ECF 274, PgID 273; ECF 307-7, PgID 672 (under seal); *e.g.*, ECF 213.

The Sentencing Commission, however, has determined that a murder for hire conviction is less serious than a first or second-degree murder conviction. *Compare* U.S.S.G. § 2E1.4 (2001) (murder for hire conviction carries a base level of thirty-two) *with* U.S.S.G. § 2A1.1 (2001) (first-degree murder conviction carries a base level of

10

forty-three) *and* U.S.S.G. § 2A1.2 (2001) (second-degree murder conviction carries a base level of thirty-three). But simply because murder for hire invokes a less significant punishment than other kinds of murder, the policy determination of a majority of the Sentencing Commission in no way minimizes the seriousness of Defendant's large-scale drug trafficking and intentional taking of human life. *Araña*, 2020 WL 2214232, at *5–6 (explaining that federal courts rarely reduce life sentences for murder). Not to mention, Defendant's major convictions created an overall offense level of forty-three—the highest offense level available. ECF 307-7, PgID 672 (under seal); ECF 213. No matter how Defendant's crimes are framed, Defendant killed a human being for fifty-thousand dollars. ECF 274, PgID 270–71. Serving only twenty years in jail will no doubt minimize the seriousness of Defendant's murder.

There are, however, two recent cases in which federal courts found that compassionate release outweighed the seriousness of prisoner's murder conviction. But Defendant's circumstances are materially different from the two cases.

In the first case, a federal court granted compassionate release to a domestic violence victim who killed her husband. *United States v. Gluzman*, No. 7:96-cr-323, 2020 WL 4233049, at *1–2 (S.D.N.Y. July 23, 2020). There, the Government offered no "evidence to suggest that [the defendant] had displayed violence outside of" the murder. *Id.* at *17. To the contrary, the evidence showed that while in prison the woman "volunteered her time assisting women who were studying for the GED, helped organize worship services, and served as a spiritual mentor. . . ." *Id.* And the defendant faced the severe federal Sentencing Guidelines "only by the happenstance

11

that she traveled a short distance across the border from New Jersey to New York." *Id.* at *20. If the murder had occurred intra-state, then "her sentence would have been shorter." *Id.* In brief, Defendant Wright's criminal history, convictions, and prison behavior are antithetical to the circumstances in *Gluzman*.

In the second case, a federal court granted compassionate release to a prisoner convicted of drug trafficking, murder, and other crimes. *Tidwell*, 2020 WL 4504448, at *1. But that defendant—unlike Defendant Wright—was a "model inmate" who provided counseling to new inmates, lacked any violent disciplinary record in prison, and completed over thirty-four educational courses. *Id.* at *8, *11. Plus, that defendant had served a longer prison sentence than Defendant Wright. *Id.* at *8.

For all that, Defendant's case is most comparable to the compassionate release denial in *Araña*, 2020 WL 2214232, at *2–4. In *Araña*, the Honorable Laurie J. Michelson denied compassionate release to a sixty-eight-year-old defendant convicted of drug trafficking and murder for hire. *Id.* That defendant—like Defendant Wright—had significantly deteriorating physical health, *id.* at *2, and lacked any "remorse or responsibility until after multiple [unsuccessful] filings for compassionate release[,]" *Araña,* 2020 WL 5569803, at *3. But—unlike Defendant Wright—the defendant completed more than fifty programs, "on decision-making, job skills, self-management, handling stress, and avoiding recidivism." *Araña,* 2020 WL 2214232, at *2–4. And Judge Michelson denied compassionate release because "on balance, the applicable § 3553(a) factors do not support" compassionate release. *Id.* at *6.

12

The bottom line remains that Defendant's "criminal conduct was undeniably serious" because he not only "played an integral role in a drug trafficking scheme over a period of years[,]" but he also killed a man. *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020). On the whole, releasing Defendant almost twenty years after a jury convicted him of trafficking drugs, working with a cartel, and murdering a man in exchange for fifty-thousand dollars "would not promote respect for the law[,] proper deterrence, [or] provide just punishment." *United States v. Johnson*, No. 11-20752, 2020 WL 5652107, at *2 (E.D. Mich. Sept. 23, 2020).

### C. *The Need to Avoid Unwarranted Sentence Disparities*

Last, the Government correctly noted that "[t]his provision is primarily aimed at national disparities, rather than those between co-defendants." ECF 307, PgID 614 (under seal) (citing *United States v. Rivera-Gonzalez*, 626 F.3d 639, 648 (1st Cir. 2010)). Here, there is no disparity for Defendant because the average federal sentence imposed for murder is slightly more than 255 months, which is around the same length that Defendant has served for murder and drug trafficking. *See Table 15, Sentence Imposed by Type of Crime*, United States Sentencing Commission, (Sept. 25, 2020), https://bit.ly/2Gettoz [https://perma.cc/522E-7GRT].

And even if the Court needed to consider the co-defendants' sentences, then the Court would still find that the sentencing disparity was in fact warranted. There are two straightforward reasons why the co-defendants received shorter prison sentences: each cooperated, and neither was the trigger man. *See* ECF 274, PgID 271–

13

72 (detailing that Kelsey cooperated with the Government); ECF 307-2, PgID 627–28 (under seal) (detailing that Chase cooperated with the Government). In all, the Court finds that the applicable 18 U.S.C. § 3553 factors do not favor Defendant's release.

## CONCLUSION

The Court will deny Defendant's motion for compassionate release despite Defendant's deteriorating health because the 18 U.S.C. § 3553 sentencing factors favor his continued incarceration. Since the COVID-19 pandemic, only two courts have granted compassionate release motions for convicted murderers while many more have denied such motions. In short, Defendant rightly received two life sentences and the Court will not reduce the punishment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's second motion for compassionate release [301] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: October 26, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 26, 2020, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager